UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTIE JENSEN,

    Plaintiff,

v.                                                Case No. 1:12-cv-737
                                                Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                         /

**OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

        Plaintiff was born on October 18, 1949 (AR 184).[1] She alleged a disability onset date of July 20, 2009, and met the insured status requirements under the Social Security Act through March 31, 2010 (AR 21, 184). Plaintiff completed two years of college, having received an Associate's Degree in Marketing and completed a ServSafe Food Safety course from a county health department (AR 196-97). She had previous employment as an owner/manager of deli, restaurant and catering businesses, and also has been a special events coordinator at a museum, a secretary and an assistant at a farmer's market (AR 190). Plaintiff identified her disabling conditions as arising from a bicycle accident in August 2007, which resulted in a traumatic brain injury, with subsequent depression, anxiety and panic attacks (AR 189). Due to these conditions, plaintiff is extremely tired

---

[1] Citations to the administrative record will be referenced as (AR "page #").

all of the time, can only last about 4-5 hours, and after that becomes fatigued, depressed, and unable to concentrate without taking a two hour nap. She needs to sleep for 11 hours at night, and has anxiety and panic attacks. (AR 189). Plaintiff stated that after returning to work in April 2008, she was "let go," due to her work performance, on July 20, 2009 (AR 189).

The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits on December 15, 2011 (AR 19-29). The Appeals Council reviewed plaintiff's claim and issued a partially favorable decision on May 24, 2012 (AR 5-8). In this decision, the Appeals Council determined that plaintiff has been disabled since October 1, 2010 and was eligible for SSI commencing on that date (AR 8). The Appeals Council, however, denied plaintiff's request to review her claim for DIB (AR 10-12). Plaintiff filed this appeal seeking to establish a disability onset date of December 2, 2009, about four months before her last insured date for receiving DIB (March 31, 2010). Compl. at ¶¶ 5-9. Based on this record, the Court construes plaintiff's claim as contesting the ALJ's decision denying DIB. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000) ("if, as here, the Council denies the request for review, the ALJ's opinion becomes the final decision").[2]

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*,

---

[2] The Court notes that plaintiff's brief cites to the ALJ's decision as the operative decision in this appeal. *See, e.g.,* Plaintiff's Brief at pp. 3-4, 8.

25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that she suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent

3

her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of July 20, 2009 and that she met the insured status requirements under the Act through March 31, 2010 (AR 21). Second, the ALJ found that since the alleged onset date, plaintiff had the following severe impairments: status/post traumatic brain injury; depression; and anxiety (AR 21). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 22). Specifically, plaintiff did not meet the requirements of Listings 12.02 (Organic mental disorders), 12.04 (Affective disorders), and 12.06 (Anxiety-related disorders) (AR 22).

The ALJ decided at the fourth step that plaintiff has the residual functional capacity (RFC) "to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can understand, carry out and remember simple instructions, respond appropriately to supervision, coworkers and usual work situations, and deal with changes in a routine work setting." (AR 23). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 28).

At the fifth step, the ALJ determined as follows:

> The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels and therefore a vocational expert is not needed for persons who can meet the mental demand of unskilled work. The potential occupational base of unskilled jobs for an individual consists of approximately 2,500 medium, light, and sedentary occupations. The undersigned finds the record does not show that the claimant is unable to meet the basic mental demands of competitive, remunerative, unskilled work which includes the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

(AR 29). The ALJ therefore determined that plaintiff has not been under a disability, as defined in the Social Security Act, from July 20, 2009 (the alleged onset date) through December 15, 2011 (the date of the decision) (AR 29). As discussed, the Appeals Council issued a partially favorable ruling by finding that plaintiff was disabled as of October 1, 2010 (AR 8).

### III. ANALYSIS

Plaintiff raised one issue on appeal:

**The Commissioner erroneously failed to give appropriate weight to the opinions of the treating sources and misapplied the law.**

**A.    Plaintiff's alleged disability date**

Plaintiff contends that she became disabled as of December 2, 2009, the date on which Greeley Miklashek, M.D., evaluated plaintiff and determined that she had a Global Assessment of Functioning ("GAF") of 30 (AR 339-42). Plaintiff's Brief at pp. 14-15.[3] A GAF of 30, which Dr. Miklashek assigned to plaintiff, lies within the 21 to 30 range, which indicates "behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." *DSM-IV-TR* at p. 34.

While plaintiff apparently relies on this low GAF score as a basis for her disability claim, the Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Social Security*, No. 95–1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). A GAF score "may have little or no bearing on the subject's social and occupational functioning." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir.2006). In addition, "[t]he GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings." *Oliver v. Commissioner of Social Security*, 415 Fed. Appx. 681, 684 (6th Cir. 2011), quoting Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental

---

[3] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

Disorders and Traumatic Brain Injury, 65 FR 50746, 50764–65 (Aug. 21, 2000). As the Sixth Circuit explained in *Kennedy v. Astrue*, 247 Fed. Appx.761 (6th Cir.2007):

> GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning.

*Kennedy*, 247 Fed. Appx. at 766. In short, there are no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky*, 167 Fed. Appx. at 511. Rather, "the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence." *Hardaway v. Secretary of Health & Human Services*, 823 F.2d 922, 927 (6th Cir.1987) (citation omitted). Accordingly, to the extent that plaintiff asserts that her GAF score of 30 establishes a disability, this claim should be denied.

### B. The ALJ's evaluation of plaintiff's treating physicians and psychologists

In this appeal, plaintiff maintains that her disability commenced on December 2, 2009. She contends that the opinions of her primary treating sources, Wilbur Leer, Ph.D., Joy DeJong, Ph.D. and Jeffrey Crandle, D.O., should be given controlling weight in making this determination.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical

professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d 284 at 287.

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004);

20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

### 1. Joy DeJong, Ph.D.

Dr. DeJong prepared an outpatient neuropsychological evaluation/discharge summary for plaintiff on October 20, 2007 (AR 434-38). Based on test results, Dr. DeJong saw "no significant impact from [plaintiff's] injury on her intellectual functioning" (AR 436). Later in the summary, Dr. DeJong stated that plaintiff had deficits, "most notably in the areas of independent recall of detailed verbal information and novel problem solving" (AR 437). The doctor felt that these deficits were likely to affect her ability to function successfully in her catering business, "[a]s this job requires great organization, attention to detail, the ability to multitask, and the need to recall important information" (AR 437).

The ALJ addressed Dr. DeJong's opinion as follows:

> The claimant has a history of a bicycle accident in August 2007, with right subdural hematoma and multiple facial fractures (10F/3, 12F/8). The claimant was hospitalized and spent time in a rehabilitation facility (10F/5). In an October 2007 neuropsychological evaluation, including testing, the claimant's full score IQ on the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III) was in the high average range. Joy Dejong, Ph.D, noted no significant impact from the claimant's injury on her overall intellectual functioning (10F/7).

(AR 24).

Plaintiff does not allege that she was disabled when Dr. DeJong examined her in August 2007. Nor has plaintiff demonstrated how Dr. DeJong's opinion is relevant to her claim that she became disabled on December 2, 2009.

9

## 2. Jeffrey Crandle, D.O.

On December 28, 2009, Dr. Crandle identified plaintiff as suffering from depression under fair control, anxiety under poor control, and subdural hemorrage (AR 715). On March 31, 2010 (plaintiff's date last insured), the doctor noted that she was suffering from a chronic depressive disorder, chronic anxiety state, and that her subdural hemorrhage was stable (AR 697). On November 2, 2010, Dr. Crandle identified plaintiff's chronic problems as subdural hemorrage, post-traumatic stress disorder and Vitamin B-12 deficiency (AR 678). On that same date, the doctor requested assistance from Dr. Leer, stating:

> Christie continues to struggle with symptoms of anxiety and mild depression. Panic attacks are somewhat frequent. She is [sic] not done well with typical SSRI medications including Celexa, Zoloft, and remeron. I have initiated a low doseof Lexapro 10 mg daily.
>
> You have any suggestions for typical treatments that may help patients with prior head injury with such symptoms of depression and anxiety? Would you like to see her in follow-up?

(AR 676).

The ALJ addressed Dr. Crandle opinions as follows:

> Jeffrey Crandle, D.O., the claimant's primary care provider, indicated in October 2010 treatment notes that he agreed that the likelihood of claimant sustaining employment was very low (13F/9). As stated above statements that a claimant is "unable to work" is an issue reserved for the Commissioner. Additionally, it is vague and does not discuss the claimant's abilities on a function by function basis.

(AR 27).

Dr. Crandle began treating plaintiff in December 2009 (AR 715-16) and continued to treat plaintiff through November 2010 (AR 675-720). Dr. Crandle's opinion would be relevant to plaintiff's DIB claim because he was treating plaintiff prior to her date last insured of March 31,

2010 (AR 696-716). Although plaintiff filed claims for both DIB and SSI, the ALJ only referred to Dr. Crandle's notes made after her date last insured, which had the effect of omitting any reference to the doctor's records that would be relevant to plaintiff's DIB claim. Under these circumstances, the ALJ failed to give good reasons for rejecting Dr. Crandle's opinions as they relate to her DIB claim. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should re-evaluate Dr. Crandle's records as they pertain to plaintiff's condition up to and including her date last insured of March 31, 2010.

### C. Wilbur Leer, Ph.D.

Dr. Leer completed a "Mental Impairment Questionnaire" on November 24, 2010 (AR 736-41). The questionnaire stated that plaintiff suffered from a brain injury and mild depression (AR 736). The form indicated that plaintiff had some serious impairments including: inability to work a normal workday and workweek without interruptions from psychologically based symptoms; "unable to meet competitive standard" in dealing with stress of semiskilled and skilled work; moderate to marked restrictions of activities of daily living; and extreme difficulties in maintaining concentration, persistence or pace (AR 736-41). Although he signed the form, the doctor did not agree with all of statements made in it, and later testified in a sworn statement from June 16, 2011, that plaintiff prepared the checklist information on the form and the doctor prepared the narrative (AR 784-87).

In his sworn statement, Dr. Leer also stated that his working diagnosis with plaintiff included a cognitive disorder (auditory memory problems and problems with concentration and focus) and an adjustment disorder with anxiety and depressive features, meaning that she has not

accepted the anxiety, depression and emotional issues arising from her head injury (AR 775-76). Dr. Leer opined that plaintiff was not capable of working full time in a competitive capacity due to endurance and her cognitive disorder, i.e., "[s]he just doesn't have the mental capacity to just keep up and do the job eight hours a day, five days a week, and do it with quality" (AR 776). The doctor further opined that even if plaintiff was trained and obtained a college degree (e.g., as a dietician), plaintiff could not work because she would run out of energy, "her brain just shuts down," she can't think well and she lacks the mental capacity to fulfill the job duties (AR 777-78). The doctor also felt that plaintiff's IQ testing was not that good and "really misleading" and that she may have been using extra effort to please the doctor (AR 778-80). Nevertheless, Dr. Lee testified that the test scores were valid (AR 780).

The ALJ addressed Dr. Leer's opinions as follows:

> Wilbur Leer, PhD., neuropsychologist, evaluated the claimant in October 2010. The claimant reported resuming her catering business, but at a slower pace, and that she remained on several community Boards and in some community activities. The claimant reported feeling that she had recovered well since the accident, but still had difficulty in some processing activities, and fatigue. Testing showed the claimant to have a verbal IQ of 90, a performance IQ of 140 and a full scale IQ of 111, placing her overall intellectual functioning in the high average range (14F/7). Dr. Leer opined that the claimant had resolved many of her emotional issues except for perhaps recent depression that she reported (l4F/9). Dr. Leer noted that he had no concerns about the claimant campaigning for a county commissioner office position, as she was a very capable and knowledgeable individual who should do well if elected. Dr. Leer further noted that he did not feel there was any need for a repeat neuropsychological evaluation (l4F/11).

\* \* \*

> As for the opinion evidence, Dr. Leer completed a mental impairment questionnaire in November 2010. Dr. Leer opined that the claimant is limited in her ability to maintain attention for a 2-hour segment; unable to deal with normal work stress and perform at a consistent pace; and in her ability to function in a normal workday and workweek without interruptions from psychologically based symptoms. Dr. Leer indicated that the claimant had a low IQ or reduced intellectual functioning

and opined that the claimant had moderate to marked limitations in activities of daily living, mild limitations in maintaining social functioning, and extreme difficulties in maintaining concentration, persistence or pace. Dr. Leer opined that the claimant would be absent more than four days per months (18F). In June 2011, Dr. Leer provided a statement during an interrogatory with the claimant's attorney. Dr. Leer stated that the claimant has a cognitive disorder and adjustment disorder with anxiety and depressive features. Dr. Leer opined that the claimant is not capable of working full time in a competitive capacity due to her cognitive disorder and that she does not have the mental capacity to just keep up and do the job 8 hours a day, five days a week, and do it with quality. Dr. Leer further stated that the claimant had filled out several of the boxes in the November 2010 questionnaire and that those would not have been his opinion in some of them (20F). The undersigned accords little weight to this opinion, as it is not consistent with his own evaluation of the claimant or his records. Furthermore, statements that a claimant is "unable to work", is an issue reserved to the Commissioner.

(AR 25, 27).

Plaintiff has not demonstrated how Dr. Leer's opinion from October 2010 is relevant to her condition either on December 2, 2009 or on her date last insured of March 31, 2010. "[I]nsured status is a requirement for an award of disability insurance benefits." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984). Since plaintiff's insured status for purposes of receiving DIB expired on March 31, 2010, she cannot be found disabled unless she can establish that a disability existed on or before that date. *Id.* "Evidence relating to a later time period is only minimally probative." *Jones v. Commissioner of Social Security*, No. 96–2173, 1997 WL 413641 at *1 (6th Cir. July 17, 1997), citing *Siterlet v. Secretary of Health & Human Services*, 823 F.2d 918, 920 (6th Cir. 1987) (where doctor examined the claimant approximately eight months after the claimant's insured status expired, the doctor's report was only "minimally probative" of the claimant's condition for purposes of a DIB claim). Evidence of a claimant's medical condition after the last insured date is only considered to the extent it illuminates that condition before the expiration of the

13

claimant's insured status. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988). Accordingly, plaintiff's claim of error will be denied.

### D. New evidence

Plaintiff's brief refers to treatment by Katherine Jawor, D.O. and Derek Burk, NP (Exhibit 25F), Linda Wells, M.A. (Exhibit 28F), and Ivan Landan, M.D. (Exhibit 26F). However, none of this evidence was before the ALJ, who reviewed medical evidence through Exhibit 23F (AR 40). These records were submitted as additional evidence to the Appeals Council (AR 13). When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g). Plaintiff has not requested a sentence six remand. Accordingly, the Court will not consider this evidence.[4]

### IV. CONCLUSION

The ALJ's decision with respect to plaintiff's DIB claim is not supported by substantial evidence. The Commissioner's decision denying plaintiff's DIB claim will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should re-

---

[4] Furthermore, the opinions of Dr. Jawor, NP Burk, Ms.Wells and Dr. Landan, M.D. relate to examinations or correspondence which occurred in 2011 or 2012, long after plaintiff's date last insured (AR 849-67). Plaintiff has not demonstrated how this evidence is relevant to her DIB claim at issue in this appeal. *See Higgs*, 880 F.2d at 863.

14

evaluate Dr. Crandle's records as they pertain to plaintiff's condition up to and including her date last insured of March 31, 2010. A judgment consistent with this opinion shall be issued forthwith.


Dated: March 28, 2014                                      /s/ Hugh W. Brenneman, Jr.
                                                           HUGH W. BRENNEMAN, JR.
                                                           United States Magistrate Judge